IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ELIJAH WEATHERSBY,

                             Plaintiff,

                                                    Civ. Action No.
                                                    9:05-CV-0144 (FJS/DEP)

          vs.

WARREN BARKLEY, Superintendent, *et al.,*

                             Defendants.

_____

APPEARANCES:                              OF COUNSEL:

<u>FOR PLAINTIFF</u>:

ELIJAH WEATHERSBY, *Pro Se*

<u>FOR DEFENDANTS</u>:

HON. ANDREW M. CUOMO                MARIA MORAN, ESQ.
Office of Attorney General
615 Erie Blvd. West, Suite 102
Syracuse, NY 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

          Plaintiff Elijah Weathersby, a New York State prison inmate and a

practicing Muslim, has commenced this action pursuant to 42 U.S.C. §

1983, alleging deprivation of his rights under the First and Eighth

Amendments to the United States Constitution.  In his complaint, plaintiff

asserts that he was harassed by prison officials at the facility in which he was housed, in retaliation for having engaged in protected activity, and that his religious free exercise rights were infringed when, while serving disciplinary confinement, he was not allowed to participate in a religious feast to celebrate the close of Ramadan.  Plaintiff asserts claims against the superintendent and two other employees employed at the prison in which he was confined at the relevant times, both individually and in their official capacities, and seeks an award of compensatory and punitive damages.

Currently pending before the court is a motion by the defendants for the entry of summary judgment dismissing plaintiff's complaint in its entirety, both procedurally based upon plaintiff's failure to fully exhaust administrative remedies with regard to certain of his claims, and on the merits in light of his failure to establish their personal involvement in the violations alleged.  Having carefully reviewed the record now before the court in light of defendants' arguments, though without the benefit of a response from plaintiff, I recommend that defendants' motion be granted.

I.      BACKGROUND[1]

---

[1]      In light of the procedural posture of this case the following facts are set forth in a light most favorable to the plaintiff, with all reasonable inferences drawn in his favor.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  The court's findings are also informed by the facts set forth in defendants' statement pursuant to

Plaintiff is a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  During the period relevant to his claims, plaintiff was housed in the Cape Vincent Correctional Facility ("Cape Vincent"), located in Cape Vincent, New York. Complaint (Dkt. No. 1) § 6 ¶ 1.

Certain of plaintiff's claims have, as their genesis, a request by the plaintiff, who at the time was housed in the D-1 unit at Cape Vincent, to defendant J. Mason, the Deputy Superintendent of Security at the facility, that he be removed from all disciplinary restrictions, or receive a "time cut", in light of his recent arrival at the facility.  Complaint (Dkt. No. 1) § 6 ¶ 1 & Exh. A.  While that request was verbally granted, and a notation to that effect was made in the appropriate housing unit log book by defendant Mason, various other corrections officials refused to honor the time cut directive in light of the fact that in verbally issuing the instructive defendant Mason had not complied with established procedures, requiring that such requests be granted in writing.[2]  Complaint (Dkt. No. 1) § 6 ¶ 2 & Exh. A.

---

the Northern District of New York Local Rule 7.1(a)(3) which, by virtue of plaintiff's failure to oppose defendants' motion, have been accepted as true for purposes of the instant motion.  *See* pp. 3-7, *post.*

[2]   Defendant Mason later rectified the omission by issuing a memorandum confirming his authorization of the time cut.  Complaint (Dkt. No. 1) Exh. A.

On November 16, 2004, following his transfer into the E-1 housing unit at Cape Vincent, plaintiff was issued an inmate misbehavior report by a corrections officer, accusing him of creating a disturbance (Disciplinary Rule 104.13), refusing to comply with a direct order (Disciplinary Rule 106.10) and failure to promptly produce an identification card (Disciplinary Rule 110.10). Complaint (Dkt. No. 1) § 6 ¶ 3 & Exh. B; Defendants' Exhibits (Dkt. No. 20) Exh. A. That misbehavior report stemmed from an incident whereby plaintiff was observed speaking loudly outside of his cubicle after a "lights out" order had been given, and his subsequent failure to comply with a directive by corrections officials that he end his conversation. *Id.*

A Tier II disciplinary hearing was conducted on November 22, 2004 to address the charges set forth in the misbehavior report.[3] Defendants' Exhibits (Dkt. No. 20) Exh. A. At the conclusion of that hearing, plaintiff was found guilty only of creating a disturbance, but exonerated on the

---

[3]      The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

other two counts.[4]  Defendants' Exhibits (Dkt. No. 20) Exh. A.  As a result of the hearing officer's findings, a penalty which included thirty days of keeplock confinement, with a corresponding loss of recreation, packages, commissary and telephone privileges, was imposed.  *Id.*

Plaintiff was administered a second misbehavior report, by another corrections officer, on November 19, 2004, based upon his alleged failure to work as required at the facility's mess hall.  Complaint (Dkt. No. 1) § 6 ¶ 5 & Exh. D; Defendants' Exhibits (Dkt. No. 20).  That misbehavior report charged the plaintiff with being out of place (Disciplinary Rule 109.10) and a movement violation (Disciplinary Rule 109.12).  *Id.*  At a Tier I hearing conducted on November 20, 2004, plaintiff was found guilty of the offenses charged, resulting in a thirteen day loss of recreation privileges.  *Id.* § 6 ¶ 7.

Plaintiff was issued yet a third misbehavior report, on November 20, 2004, when, following completion of the Tier I hearing, he failed to report directly to work at the prison messhall, as required.  Complaint (Dkt. No. 1) § 6 ¶ 8; Defendants' Exhibits (Dkt. No. 20) Exh. B.  That misbehavior report charged plaintiff with being out of place (Disciplinary Rule 109.10),

---

[4]        While at the outset of the hearing plaintiff pleaded guilty to failing to promptly produce an identification card, denying the other two charges, he was nonetheless acquitted on that count.  Defendants' Exhibits (Dkt. No. 20) Exh. A.

a movement regulation violation (Disciplinary Rule 109.12), and refusal to obey a direct order (Disciplinary Rule 106.10). *Id.* Following a Tier II disciplinary hearing, conducted on November 22, 2004, plaintiff was found guilty of refusing to obey a direct order and being out of place, but was exonerated on the movement regulation violation count. *Id.* As a result of that finding, the hearing officer imposed a penalty which included thirty days of disciplinary keeplock confinement, again with a corresponding loss of recreation, packages, commissary and telephone privileges. *Id.*

At approximately 9:50 a.m. on the morning of November 22, 2004, shortly after having received a copy of the hearing disposition which included the commissary restriction, plaintiff purchased items from the Cape Vincent prison commissary. Defendants' Exhibits (Dkt. No. 20) Exh. C. Because that purchase was unauthorized, in light of the commissary restriction, on that same day plaintiff was issued a fourth misbehavior report, alleging non-compliance with the hearing disposition (Disciplinary Rule 181.10), being out of place (Disciplinary Rule 109.10) and a movement regulation violation (Disciplinary Rule 109.12). *Id.* A Tier III hearing was conducted on November 29, 2004 to address this latest misbehavior report. *Id.* Following the entry of a guilty plea to all three charged offenses, plaintiff was found to have committed the three

violations charged and was ordered placed in disciplinary confinement within the facility's special housing unit ("SHU") for a period of six months, with a corresponding loss of packages, commissary, and telephone privileges. *Id.* The hearing officer also recommended the loss of three months of good time credits as a result of that finding.[5]

On December 11, 2004, during the period while plaintiff was confined within the SHU, Muslim inmates at Cape Vincent were permitted to attend an Eid-ul-Fitr family festival to celebrate the end of Ramadan. Complaint (Dkt. No. 1) § 6 ¶ 16; Defendants' Exhibits (Dkt. No. 20) Exh. E. In light of his disciplinary confinement within the facility's SHU, however, plaintiff was not permitted to attend the religious feast, although he was allowed to participate in the Eid-ul-Fitr prayer to commemorate the end of the religious holiday. *Id*.

II.   PROCEDURAL HISTORY

On January 25, 2005, after partially exhausting available, internal administrative remedies relating to his claims, plaintiff commenced this action. Dkt. No. 1.   In his complaint, *inter alia*, plaintiff asserts that

---

[5]   Because I do not construe plaintiff's complaint as asserting a procedural due process violation growing out of the November 29, 2004 Tier III hearing, he is not required to affirmatively relinquish any claim to reinstatement of the lost good time credits before pursuing his section 1983 claims in this action. *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).

defendants' actions, including their issuance of misbehavior reports and pursuit of the charges contained within them, represented a form of harassment in retaliation for his having registered a complaint regarding the failure of prison officials to comply with the time cut verbally authorized by defendant Mason, and that the defendants' actions were tantamount to cruel and unusual punishment.  Plaintiff's complaint also alleges the defendants unlawfully interfered with his right to freely exercise his chosen religion by prohibiting his attendance at the Eid-ul-Fitr feast.  Named as defendants in plaintiff's complaint are three DOCS employees, including Warren Barkley, the Superintendent at Cape Vincent; Deputy Superintendent of Security J. Mason; and Mark K. Kinderman, the Deputy Superintendent of Programs at the facility.  *Id.*

On August 18, 2006, following the joinder of issue and completion of pretrial discovery, defendants moved seeking the entry of summary judgment dismissing plaintiff's complaint in its entirety.   Dkt. No. 20.  In their motion, defendants have argued that plaintiff did not fullfill his obligation to fully exhaust available administrative remedies before commencing this action and, without the benefit of an intervening Supreme Court decision undermining this argument, have urged the court to apply a total exhaustion rule and thereby dismiss plaintiff's complaint in

its entirety on this procedural basis.  *Id.*  Defendants also maintain that

plaintiff's claims against them in their official capacities are deficient under

the Eleventh Amendment, and additionally assert that they had no

personal involvement in any constitutional violation alleged.  *Id.*

Defendants' motion, to which plaintiff has not responded, is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

      A.   Plaintiff's Failure to Oppose Defendants' Motion

      The first issue to be addressed is the legal significance, if any, of

plaintiff's failure to oppose defendants' summary judgment motion, and

specifically whether that failure automatically entitles defendants to

dismissal of plaintiff's complaint, based upon their motion.

      This court's rules provide that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief requested
> therein, the non-moving party's failure to file or serve any
> papers as this Rule requires shall be deemed as consent
> to the granting or denial of the motion, as the case may
> be, unless good cause is shown.

N.D.N.Y.L.R.7.1(b)(3).  While recognizing that *pro se* plaintiffs are entitled

to special latitude when defending against summary judgment motions *(see Jemzura v. Public Service Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)), courts in this district have found it appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based upon a *pro se* plaintiff's failure to respond.  *Robinson v. Delgado*, 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F.Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted – even in the absence of opposition – the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp.2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this

district have not hesitated to enforce Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[6]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

B.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no

---

[6]    According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3) (emphasis omitted).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

C.    Exhaustion of Remedies

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), altered the inmate litigation landscape considerably, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  One such restriction introduced by the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The New York Inmate Grievance Program consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within fourteen days of

the incident.[7]  7 N.Y.C.R.R. § 701.7(a).  The IGRC, which is comprised of

inmates and facility employees, then issues a determination regarding the

grievance.  7 N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the

superintendent of the facility next reviews the IGRC's determination and

issues a decision.  *Id.* § 701.7(b).  The third level of the process affords

the inmate the right to appeal the superintendent's ruling to the Central

Office Review Committee ("CORC"), which makes the final administrative

decision.  *Id.* § 701.7(c).  Absent the finding of a basis to excuse non-

compliance with this prescribed process, only upon exhaustion of these

three levels of review may a prisoner seek relief pursuant to section 1983

in federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y.

2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL

1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Two grievances have been lodged by the plaintiff at Cape Vincent in

connection with the matters set forth in his complaint.  In the first,

grievance no. CV-7293-04, filed on November 24, 2004, Weathersby

asserted that the misbehavior report issued to him on November 19, 2004

was false, and requested that an investigation be conducted into the

---

[7]      The Inmate Grievance Program supervisor may waive the timeliness of
the grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. §
701.7(a)(1).

matter.  Complaint (Dkt. No. 1) § 6 ¶¶ 5-6 & Exh. C; Defendants' Exhibits

(Dkt. No. 20) Exh. D.  That grievance was accepted only to the extent that

plaintiff's allegations were investigated by a security supervisor, resulting

in the finding of insufficient evidence to substantiate plaintiff's allegations.

*Id.*  With that exception, plaintiff's grievance was denied, and that denial

was upheld on appeal to the superintendent, and further to the CORC.

*Id.; see also* Eagen Aff. (Dkt. No. 20) ¶ 5 & Exh. 1.

Plaintiff's second relevant grievance was filed on December 15,

2004, and assigned grievance no. CV-7315-04.  Defendants' Exhibits

(Dkt. No. 20) Exh. E.  In that grievance, plaintiff complained of not

receiving his Eid-ul-Fitr family festival meal, while confined within the

Cape Vincent SHU.  *Id.*  Following an investigation, the facility's IGRC

determined that the grievance should be dismissed.  *Id.*  Plaintiff did not

appeal that determination to the CORC.  *Id.*; *see also* Eagan Aff. (Dkt. No.

20) ¶ 5 & Exh. 1.

Based upon the foregoing , it is clear that with the exception of

plaintiff's grievance no. CV-7293-04, narrowly challenging the alleged

issuance of a false misbehavior report on November 19, 2004, plaintiff

has failed to comply with his obligations under the PLRA to exhaust

available administrative remedies before commencing suit.  It is true that

in addition to these grievances, plaintiff also wrote to defendant Barclay on December 11, 2004, complaining of the failure to provide him with the Eid-ul-Fitr family festival meal.  Complaint (Dkt. No. 1) § 6 ¶ 16 & Exh. E; Defendants' Exhibits (Dkt. No. 20) Exh. F.  That letter generated a written response on January 3, 2005 by defendant Kinderman, the Deputy Superintendent of Programs at the facility, explaining that plaintiff's inability to participate in the festival was attributable to his misbehavior and resulting SHU disciplinary confinement.  Complaint (Dkt. No. 1) § 6 ¶ 17 & Exh. F.  Neither the letter nor defendant Kinderman's response, however, served to obviate the need for plaintiff to file and pursue to the CORC a grievance regarding the matter before filing an action based upon the same claim.  *See Wagnoon v. Johnson*, 02 Civ. 2082, 2003 WL 22384770, at *4-*5 (S.D.N.Y. Oct. 20, 2003).

Based upon the foregoing, I recommend that all of plaintiff's claims, with the exception of those directed toward the allegedly false misbehavior report issued on November 19, 2004, be dismissed based upon his failure to satisfy the PLRA's exhaustion requirement.[8]

---

[8]    In their motion, defendants urge the court to invoke a total exhaustion rule, and dismiss all of plaintiff's claims in this action, whether properly exhausted or not, notwithstanding the Second Circuit's rejection of that principle in *Ortiz v. McBride,* 380 F.3d 649, 663 (2004), *cert. denied*, 543 U.S. 1187, 125 S. Ct. 1398 (2005).  *See* Defendants' Memorandum (Dkt. No. 20) at 9 n. 1.  That request was made based upon the pendency of *Jones v. Bock,* ___ U.S. ___, 127 S. Ct. 910 (2007), a case which has since been resolved by the Supreme Court in a decision siding with the

D.    Eleventh Amendment

In their motion, defendants argue that to the extent plaintiff's claims are asserted against them in their official capacities, seeking monetary relief, those claims are subject to dismissal.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in their official capacities, when the essence of the claim involved is one against a state as the real party in interest.  *Richards v. State of New York Appellate Division, Second Department*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984), (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89-91 102 S. Ct. 2325, 2328-2329 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[9]  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473

---

Second Circuit and rejecting a total exhaustion requirement.

[9]    By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Plaintiff's claims against the defendants in their official capacities, to the extent that they seek monetary damages, are thus subject to dismissal under the Eleventh Amendment.  And, while defendants would properly be named in their official capacities in the event injunctive relief were sought *Gowin v. Greiner*, No. 01 CIV. 6933, 2002 WL 1770772, at *3-*4 (S.D.N.Y. July 31, 2002), a careful review of plaintiff's complaint reveals that it does not request such non-monetary relief.  Accordingly, I recommend that plaintiff's claims against the defendants in their official capacities be dismissed.

E.    Personal Involvement

In their motion, defendants also assert that the record before the court fails to establish their involvement in any of the constitutional violations asserted in his complaint.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

By its very nature, plaintiff's Eighth Amendment claim requires such

a showing of personal involvement before liability may attach.  A claim

alleging that prison conditions violate the Eighth Amendment must satisfy

both an objective and subjective requirement – the conditions must be

"sufficiently serious" from an objective point of view, and the plaintiff must

demonstrate that prison officials acted subjectively with "deliberate

indifference".  *See Leach*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000)

(Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991));

*Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct.

1, 1998) (Kahn, J. & Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S.

294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of

and disregards an excessive risk to inmate health or safety; the official

must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw the

inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F.

Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

The precise nature of plaintiff's Eighth Amendment claim is far from

clear.  That claim apparently stems from plaintiff's attribution of the

harassment which he experienced to retaliatory animus growing out of his

complaint regarding the disagreement over defendant Mason's verbal time

cut authorization.  The record before the court, however, fails to establish

a basis to find personal involvement of any of the three defendants in the

alleged harassment of the plaintiff even assuming, *arguendo,* that it arose

to a level of constitutional significance.[10]  Plaintiff's complaint is silent as

to any basis for concluding that defendant Kinderman was aware of or

participated in the events giving rise to the Eighth Amendment claim.  The

only possible connection between plaintiff's Eighth Amendment claim and

defendant Barkley concerns the allegation that plaintiff appealed a guilty

finding from one of the disciplinary hearings to the superintendent, without

receiving a response.  Complaint (Dkt. No. 1) § 6 ¶ 5.  Such an allegation,

however, is insufficient to satisfy the personal involvement requirement.

*Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4

(S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an

official ignored a prisoner's letter of protest and request for an

---

[10]     One of the claims made is that plaintiff was issued false misbehavior reports.  The issuance of false misbehavior reports, in and of itself, however, does not establish constitutional violation.  *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988))  False misbehavior reports issued in retaliation for an inmate having engaged in protected activity, on the other hand, can comprise a constitutional claim.  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

21

investigation of allegations made therein is insufficient to hold that official

liable for the alleged violations.") (citing *Garrido v. Coughlin*, 716 F.Supp.

98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison

where only allegation was that he ignored inmate's request for an

investigation)).

It is true that greater involvement on the part of defendant Mason in

the circumstances giving rise to plaintiff's claims is alleged in his

complaint.  Plaintiff asserts, for example, that he sent a letter to defendant

Mason on or about November 14, 2005 complaining of difficulties with

officers in the housing unit.  Complaint (Dkt. No. 1) Exh. A.  A careful

reading of that letter, however, fails to reveal any circumstances which

would give rise to a Eighth Amendment claim or place defendant Mason

on notice that plaintiff was facing constitutionally offensive conditions.  In

any event, defendant Mason, upon being made aware of the problems

which plaintiff was experiencing, promptly rectified the situation by issuing

a written memorandum confirming his authorization of time cuts.  *Id.*

The other aspect of defendant Mason's involvement in the events

precipitating plaintiff's complaint involves his response, acting in that

instance as the superintendent of the facility, to plaintiff's grievance no.

CV-7293-04.  *See* Defendants' Exhibits (Dkt. No. 20) Exh. D.  That

grievance, as was previously noted, was limited to the allegation that a false misbehavior report was issued to the plaintiff, and does not contain anything that would alert a prudent reader to plaintiff's claims of suffering cruel and unusual punishment.  *See id.*

Plaintiff's Eighth Amendment claims against the three named defendants therefore turn on whether there is a proper basis to hold them liable, based upon their supervisory roles.  A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring.  *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.

1986).  There is nothing in the record before the court that would suggest

that any of the defendants, either personally or in their supervisory

capacities, had any awareness of or involvement in the Eighth

Amendment claims asserted by the plaintiff.

Allegations of personal involvement on the part of the defendants

are also lacking with regard to plaintiff's First Amendment, free religious

exercise claim.  Nowhere in his complaint does plaintiff identify any of the

three named defendants as having participated in or been responsible for

the denial of his request to participate in the Eid-ul-Fitr family feast on

December 11, 2004.  While plaintiff does allege having written a letter to

defendant Barkley complaining of that event after the fact, which letter

was responded to by defendant Kinderman, that letter, addressing an

isolated event, does not give rise to a finding of liability.  *See Murray v.*

*Koehler,* 734 F. Supp. 605, 607 (S.D.N.Y. 1990); *see also Richardson*,

347 F.3d at 435 ("[M]ere 'linkage in the prison chain of command' is

insufficient to implicate a state commissioner of corrections or a prison

superintendent in a § 1983 claim.") (citations omitted); *Greenwaldt*, 1995

WL 232736, at *4.  Accordingly, once again plaintiff is left to rely upon

supervisory liability to establish culpability of defendant Barkley and

Kinderman for the alleged First Amendment violation.[11]

In sum, plaintiff has failed to establish a basis for finding personal involvement on the part of any of the three defendants in the constitutional deprivations alleged.  I therefore recommend dismissal of all plaintiff's claims against all three defendants on this independent basis.

## IV.   SUMMARY AND RECOMMENDATION

The record now before the court firmly reflects that with the exception of a narrowly tailored grievance addressing a single misbehavior report alleged to have been falsely issued against him, in retaliation for having engaged in protected activity, plaintiff has failed to satisfy his obligation to exhaust available administrative remedies to seek redress of his complaints before commencing this action.  Plaintiff's complaint is therefore subject to dismissal on this basis, except as to the limited claim which is fully exhausted.  Turning to the merits, the record fails to disclose any basis to find personal involvement on the part of any of the three defendants in the constitutional deprivations alleged, thereby

---

[11]    In his complaint, plaintiff asserts his belief that defendant Mason was personally involved in the decision to deny him the feast meal.  Complaint (Dkt. No. 1) § 6 ¶ 14.  There are no facts in the record, however, to substantiate that belief.  Such a bare allegation, without any supporting facts, is legally insufficient, particularly in response to a motion for summary judgment, to establish personal involvement.  Cf. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

providing an independent basis for dismissal on the merits of plaintiff's claims against them.

Based upon the foregoing it is hereby recommended that defendants' motion for summary judgment (Dkt. No. 20) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

The clerk is directed to promptly forward copies of this order to the parties in accordance with this court's local rules.

Dated:      March 1, 2007
              Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\weathersby.wpd